***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement, as:
 STIPULATIONS
1. At all relevant times an Employer-Employee relationship existed between the Plaintiff-Employee and the Defendant-Employer.
2. On October 28, 1999 the Plaintiff's average weekly wage was $301.73.
3. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
 ***********
Based upon the competent and credible evidence, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. For over a year prior to October 28, 1999, Plaintiff was employed with the employer working in the carpet cleaning and restoration business. In this business, Plaintiff regularly lifted and carried carpet and carpet cleaning equipment, cleaned carpet, and performed the duties required of someone working in the carpet cleaning and restoration business.
2. Prior to beginning his work with Defendant-Employer, Plaintiff had significant pre-existing problems with his lumbar spine. Plaintiff had two surgeries to his lumbar spine in 1990 performed by Gerald Pelletier, M.D., and had a third surgery to his lumbar spine in 1995 performed by James C. Harvell, M.D.
3. Prior to October 28, 1999, Plaintiff last received treatment for his lumbar condition in February 1997, from Dr. Harvell. At that time, Dr. Harvell recommended surgical intervention for Plaintiff's symptoms in his lower back.
4. Plaintiff did not undergo the surgery recommended by Dr. Harvell in 1997. However, after seeing Dr. Harvell in 1997, Plaintiff's condition improved without surgery. Plaintiff was able to maintain a physical lifestyle, playing softball in an adult softball league, and was able to return to gainful employment.
5. During the time that Plaintiff worked for the employer, he was able to handle his duties in the carpet cleaning and restoration business without any significant interference from his lumbar condition. During Plaintiff's employment with the employer, he worked long hours and consecutive days, during a time when many homes and businesses experienced damage from hurricanes that hit Eastern North Carolina. At no time was Plaintiff unable to perform his duties for the employer, and at no time did Plaintiff miss work due to symptoms in his lumbar spine.
6. On the morning of October 28, 1999, Plaintiff was lifting a rug with a co-employee, James Lynch. While lifting the carpet, the carpet broke down in the middle and Plaintiff quickly reached to catch the falling carpet. Plaintiff felt a sudden and sharp pain in his lower back that went into his groin. Following the incident Plaintiff was unable to continue working.
7. Plaintiff timely reported the incident to his employer, and was transported by his employer to a doctor that same day.
8. Plaintiff initially was treated on October 28, 1999, at Beachcare Urgent Medical Care Center where he was examined by Dr. Evans. Plaintiff gave Dr. Evans a history of feeling a sharp pain in his right lower back that came on while lifting a heavy piece of carpet. Dr. Evans examined Plaintiff and diagnosed acute muscle spasms in his right lower back from L1 down to L5, with increased pain over his right SIJ. On November 1, 1999, Dr. Evans re-examined Plaintiff and wrote him out of work for November 1-4, 1999. Dr. Evans also prescribed physical therapy.
9. Plaintiff began a course of physical therapy with Carolina Rehabilitation. On November 19, 1999 Plaintiff returned to Dr. Evans who noted no improvement in Plaintiff's condition, and referred Plaintiff to James C. Harvell, M.D. for an evaluation. Dr. Evans wrote Plaintiff out of work pending an evaluation by Dr. Harvell.
10. Plaintiff saw Dr. Harvell on December 16, 1999 for his back condition. At that time Dr. Harvell noted Plaintiff sustained a new injury to his lumbar spine in a work-related incident on October 28, 1999 when reaching to grab a roll of carpet. Dr. Harvell advised Plaintiff to remain out of work pending further testing and treatment recommendations.
11. Following his examination with Dr. Harvell, Plaintiff underwent further diagnostic testing of his lumbar condition. Plaintiff saw Dr. Harvell on December 23, 1999 following the diagnostic tests. On that visit, Dr. Harvell recommended Plaintiff undergo operative treatment for the condition involving his lumbar spine consisting of decompression laminectomy followed by posterior spinal fusion with segmental instrumentation. This was the same surgery recommended by Dr. Harvell in 1997.
12. According to Dr. Harvell, who is familiar with Plaintiff's pre-existing back condition, Plaintiff suffered a new injury on October 28, 1999 when lifting the rug, and exacerbated his pre-existing condition. Dr. Harvell further testified that the October 28, 1999 incident significantly contributed to the need for the surgery that he recommended in December of 1999.
13. In his testimony given on November 13, 2001, Dr. Harvell testified that unless Plaintiff's condition significantly improved from December 1999, that it would be his opinion that Plaintiff remained unable to return to gainful employment. Further, Dr. Harvell testified that had Plaintiff not sustained the injury to his lumbar spine on October 28, 1999, he more likely than not would still be working for the restoration crew. According to Dr. Harvell, the specific incident that occurred on October 28, 1999 caused Plaintiff to become progressively symptomatic from the pre-existing condition involving his lumbar spine.
14. Defendants provided Plaintiff medical compensation until December 23, 1999 when Dr. Harvell recommended surgery for the Plaintiff. Defendants have paid no temporary total disability to Plaintiff since the time of his injury on October 28, 1999.
15. Plaintiff has received no medical treatment for his lumbar spine subsequent to seeing Dr. Harvell on December 23, 1999.
16. Plaintiff has not returned to work with Defendant-Employer or any other Employer subsequent to October 28, 1999.
17. On February 3, 2000, Plaintiff was incarcerated in the North Carolina Department of Corrections for convictions of Driving While Impaired. These offenses occurred prior to the October 28, 1999 rug-lifting incident. Plaintiff was incarcerated until October 10, 2000.
18. On April 2, 2001, Plaintiff underwent an Independent Medical Examination by Angelo Tellis, M.D. at the request of the Defendants. Dr. Tellis opined that Plaintiff probably had some type of acute strain on October 28, 1999 that maybe worsened his symptoms for a time, but that his ongoing complaints were a result of his pre-existing condition. Dr. Tellis also testified that Plaintiff magnified his symptoms during the examinations.
19. Evidence shows that at least as of March 8, 2001, Plaintiff was capable of some gainful employment. This evidence is based on testimony as well as video surveillance.
20. Evidence also reveals that Plaintiff sometimes rides a bicycle as a means of transportation. The use of a bicycle requires the use of leg and back muscles, further indicating that Plaintiff is not disabled and is capable of some employment. There is insufficient evidence that Plaintiff has attempted to find suitable employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 28, 1999, Plaintiff experienced a compensable injury that materially aggravated his pre-existing lumbar condition. N.C. Gen. Stat. § 97-2(6).
2. As a result of Plaintiff's compensable injury, he has been temporarily totally disabled from October 28, 1999 until March 8, 2001. Plaintiff is entitled to TTD benefits in the amount of $201.16 per week except that he is not entitled to TTD benefits from February 3, 2000 to October 10, 2000 as he was incarcerated during this time. N.C. Gen. Stat. § 97-29.
3. Plaintiff's treatment as a result of his compensable injury of October 28, 1999, was necessary to give relief, effect a cure and to lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall provide medical compensation for Plaintiff's compensable injury of October 28, 1999, including, if indicated, the surgery recommended by Dr. Harvell for Plaintiff's lumbar spine condition.
2. Defendants, subject to an attorney fee approved below, shall pay to Plaintiff, on account of his temporary disability, the amount of $201.16 per week from October 28, 1999, to March 8, 2001, with the exception of the period Plaintiff was incarcerated which was from February 3, 2000 to October 10, 2000.
3. Plaintiff's counsel is hereby awarded 25% of the benefits awarded to Plaintiff in paragraph 2 of this award. Said amount shall be deducted and paid directly to Plaintiff's attorney. The remaining amount shall be paid to Plaintiff in a lump sum.
4. Defendants shall pay the costs.
This 1st day of August 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN